IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

MARGARET ALLEN

                                                              PLAINTIFF

v.                                             CIVIL ACTION NO. 4:13-cv-00174-GHD-JMV

UNITED STATES DEPARTMENT OF
AGRICULTURE; TOM VILSACK, Secretary;
and AGRICULTURAL RESEARCH SERVICE                             DEFENDANTS

## MEMORANDUM OPINION GRANTING DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Presently before the Court is Defendants' motion to dismiss or, in the alternative, for summary judgment [8]. Upon due consideration, the Court finds that the motion should be granted for the reasons stated below.

### A. Factual and Procedural Background

After a complicated EEO and EEOC process, Plaintiff Margaret Allen ("Plaintiff") initiated this suit in the Circuit Court of Bolivar County, Mississippi against her employer, the United States Department of Agriculture (the "USDA"), as well as Tom Vilsack, its secretary, and the Agricultural Research Service, an agency of the USDA. Plaintiff claims she has suffered sex discrimination, retaliation, hostile work environment, and the denial of benefits in violation of Title VII of the Civil Rights Act of 1964. She also urges a breach-of-contract claim for Defendants' alleged "failure or refusal to comply with the terms and conditions of the Resolution Agreement" reached between Plaintiff and Defendants during her EEO proceeding "with regard to her prior, internal complaints of harassment, discrimination, and unlawful employment practices." Pl.'s State-Ct. Compl. [2] ¶¶ 16–17. On October 7, 2013, Defendants timely removed the case to this Court.

1

On December 16, 2013, in lieu of filing an answer, Defendants filed the present motion to dismiss or, in the alternative, for summary judgment [8] raising challenges to Plaintiffs' claims under Rule 12(b)(1), Rule 12(b)(6), and Rule 56 of the Federal Rules of Civil Procedure. Plaintiff has filed a response, and Defendants have filed a reply. The matter is now ripe for review.

## B. Analysis and Discussion

### a. Rule 12(b)(1)

A court must address a Rule 12(b)(1) jurisdictional challenge before addressing a challenge on the merits, as doing so "prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Accordingly, the Court first addresses Defendants' Rule 12(b)(1) arguments.

"Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994); *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998)). A claim is "properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate" the claim. *Home Builders Ass'n, Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (internal citation omitted).

"[A] factual attack under Rule 12(b)(1) may occur at any stage of the proceedings, and plaintiff bears the burden of proof that jurisdiction does in fact exist." *Arena v. Graybar Elec. Co.*, 669 F.3d 214, 223 (5th Cir. 2012) (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980) (citations omitted)).

In such a consideration, the Court must take the well-pled factual allegations of the complaint as true and view them in the light most favorable to the plaintiff. . . . [U]nder Rule 12(b)(1), the court may find a plausible set of facts by considering any of the following: (1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.

*Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008) (citations and internal quotation marks omitted). "Subject matter jurisdiction involves a court's power to hear a case and therefore cannot be forfeited or waived." *Herod v. Potter*, 255 F. App'x 894, 896 (5th Cir. 2007) (per curiam) (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514, 126 S. Ct. 1235, 163 L. Ed. 2d 1097 (2006)).

Defendants contend that the Court lacks subject-matter jurisdiction under Rule 12(b)(1) over certain claims of Plaintiff; that Plaintiff's EEO complaint only concerns claims of disparate treatment and possibly hostile work environment; and that consequently, those were the only issues in this case that were exhausted administratively. Accordingly, Defendants ask this Court to dismiss Plaintiff's claims of retaliation for making internal complaints of sexual discrimination, hostile work environment by being placed on a performance improvement plan, and that she was subjected to baseless and falsified "write-ups" related to her work performance.[1]

Plaintiff argues in response that Defendants are judicially estopped from now arguing that Plaintiff has failed to exhaust her administrative remedies in this matter, because Defendants

---

[1] Defendants further state that although Plaintiff references a charge of discrimination and retaliation filed with the EEOC, she has neither attached this charge to her complaint nor produced the charge to Defendants' counsel, despite Defendants' counsel's attempts to obtain the document. In response, Plaintiff attaches a charge of discrimination she apparently filed with the EEOC on February 28, 2013 for sex discrimination and retaliation and including allegations of hostile work environment. *See* EEOC Charge of Discrimination 423-2013-00923 [11-1] at 5. Plaintiff also attaches her notice of dismissal on this charge. *See* EEOC Notice of Dismissal on Charge No. 423-2013-00923 [11-1] at 6.

filed as part of the prosecution of the matter before the EEOC a notice of civil action which alleged that "[t]he purported issues listed in the civil action Complaint are identical to the facts underlying the Agency Case . . . and therefore the EEO Case should be dismissed"; Plaintiff attaches this notice of civil action to her response. *See* EEOC No. 420-2013-00140X Notice of Civil Action [11-2] at 1–9. Plaintiff further maintains that the Administrative Judge found that Plaintiff had properly filed each of the issues listed in her complaint in the case *sub judice* before the EEOC as part of her grievance process and that the issues in the complaint in the case *sub judice* are "the same as those in th[e] [EEOC] complaint"; Plaintiff attaches the Administrative Judge's Order to her response. *See* EEOC No. 420-2013-00140X AJ Order [11-3].

In reply, Defendants argue that judicial estoppel does not apply in this case and that they are not taking a different position on the same issue; Defendants maintain that they were required by EEOC regulations to notify the EEOC of this action and that complying with that regulation was the purpose of their notice of civil action in the EEOC proceeding.

"Title VII prohibits an employer from making an adverse employment decision that is motivated in part by discrimination on the basis of sex, race, color, religion, or national origin." *Rivers v. Geithner*, 548 F. App'x 1013, 1016 (5th Cir. 2013) (per curiam) (citing 42 U.S.C. § 2000e–2(a)(1); *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 333 (5th Cir. 2005)). "The exclusive remedy for claims of employment discrimination by federal employees under Title VII is provided in 42 U.S.C. § 2000e–16(a)–(e)." *Id.* (citing *Pacheco v. Rice*, 966 F.2d 904, 905 (5th Cir. 1992) (citation omitted)). " '[A] primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in attempt to achieve non-judicial resolution of employment discrimination claims.' " *Vicknair v. La. Dep't of Pub. Safety & Corrs.*, 555 F. App'x 325, 331 (5th Cir. 2014) (per curiam) (quoting *Pacheco v. Mineta*, 448 F.3d 783, 788–89

(5th Cir. 2006) (citation omitted)).

"A federal employee must exhaust his administrative remedies against his employer before suing under Title VII." *Thomas v. Napolitano*, 449 F. App'x 373, 374 (5th Cir. 2011) (per curiam) (citing *Francis v. Brown*, 58 F.3d 191, 192 (5th Cir. 1995)). "A failure to exhaust deprives the court of subject-matter jurisdiction." *Farve v. Potter*, 342 F. App'x 3, 3 (5th Cir. 2009) (per curiam) (citing *Randel v. U.S. Dep't of the Navy*, 157 F.3d 392, 395 (5th Cir.1998)).[2] "[C]ourts have no jurisdiction to consider Title VII claims as to which the aggrieved party has not exhausted administrative remedies." *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd.*, 40 F.3d 698, 711 (5th Cir. 1994).

Plaintiff is a federal employee, and as such, has a distinct EEOC complaint process. *See Pacheco*, 448 F.3d at 788 n.6. Unlike employees in the private sector, federal employees must first seek internal review of their grievances through their agency's EEO office. *See* 29 C.F.R. §§ 1614.101 *et seq.* "Federal employees must seek informal counseling with an EEO counselor before filing a complaint of discrimination with the EEOC." *Rivers*, 548 F. App'x at 1016 (citing 29 C.F.R. § 1614.105(a)). An aggrieved employee "must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). If the counselor is unable to resolve the dispute informally, the counselor will notify the

---

[2] This Court is mindful that the Fifth Circuit is divided as to whether exhaustion of administrative remedies is an issue implicating a court's subject-matter jurisdiction or whether it is merely a statutory prerequisite to suit subject to equitable remedies. *See Rivers v. Geithner*, 548 F. App'x 1013, 1017 n.1 (5th Cir. 2013) (per curiam) (citing *Filer v. Donley*, 690 F.3d 643, 647 (5th Cir. 2012) (whether employee exhausted administrative remedies is jurisdictional issue); *Phillips v. Leggett & Platt, Inc.*, 658F.3d 452, 457 (5th Cir. 2011) ("The limitations period for filing a discrimination charge with the EEOC is not a jurisdictional prerequisite, and it may be tolled by equitable modification.")). "The practical difference between the two alternative interpretations is that equitable remedies such as estoppel and waiver are available for instances involving a failure to meet a prerequisite to filing a complaint; they are not available, however, to alleviate the district court's lack of subject-matter jurisdiction." *Sapp v. Potter*, 413 F. App'x 750, 752 n.1 (5th Cir. 2011) (per curiam). Regardless of whether failure to exhaust is a jurisdictional or statutory prerequisite, neither party has made any argument with respect to waiver or estoppel. Thus, this Court need not address that issue.

employee of her right to file a formal complaint of discrimination. 29 C.F.R. § 1614.105(d). The employee then has 15 days to file a formal complaint with the agency. 29 C.F.R. § 1614.106(b). Once an investigation has been conducted by the employee's agency, she may request a hearing to be conducted by an Administrative Judge appointed by the EEOC. *See* 29 C.F.R. §§ 1614.108(a), 1614.109(a). If no final agency action is taken and the formal EEO complaint has been pending for 180 days, the employee may file a civil action in federal district court. 42 U.S.C. § 2000e–16(c).

Plaintiff, who is employed as a Research Entomologist with the USDA, Agricultural Research Service, sought administrative relief through two separate channels, which are set forth below in necessarily complex detail.

In accordance with the applicable regulations, Plaintiff filed "internal complaints of sexual discrimination and a hostile work environment," Pl.'s State-Ct. Compl. [2] ¶ 7, with the EEO office of the USDA. On March 29, 2011, Plaintiff filed an internal grievance concerning Dr. Walker Jones, Research Leader for the Unit, alleging that Dr. Jones was hostile toward her when she confronted him about his dealings with Plaintiff's technician, Fannie Byrd. *See* USDA's ROI [8-1] at 31, 36, 84. On or about May 12, 2011, Plaintiff filed another internal grievance concerning the agency's subsequent removal of Plaintiff's technician, Byrd, from Plaintiff's supervision and other matters concerning the agency's response to her earlier grievance. *See id.* at 3.[3] On or about April 12, 2012, a settlement conference was held and a resolution agreement was signed by Plaintiff and the agency. *See* Pl.'s State-Ct. Compl. [2] ¶ 16. On July 5, 2012, Plaintiff filed a grievance alleging inappropriate management behavior when a temporary employee hired by Plaintiff, Ebony Williams, was removed from Plaintiff's

---

[3] Although the Report of Investigation states that this particular grievance was filed on May 12, 2012, it is apparent from the context of the grievance and the record that the correct date was actually May 12, 2011.

supervision, but was allowed to remain in the Quarantine Laboratory. *See* USDA's ROI [8-1] at 92. Plaintiff further complained of various alleged sexist statements. *See id.* at 98. On October 4, 2012, Plaintiff filed a formal complaint of employment discrimination with the USDA Office of Civil Rights Employment Complaint and Adjudication division. *See id.* at 1. The Office of Assistant Secretary for Civil Rights accepted the discrimination complaint and referred for investigation whether Plaintiff was subjected to sex discrimination when she was assigned duties that should have been assigned to the Quarantine Officer and whether she was subject to sex discrimination by management's refusal to provide her with the staffing necessary to perform her job, even though her male counterparts were staffed in accordance with their needs. *See id.* at 9. The agency issued a Report of Investigation. *See* USDA's ROI [8-1–8-8; Suppl. ROI [11-5]. Subsequently, Plaintiff sought a hearing from an Administrative Judge through the EEOC pursuant to 29 C.F.R. § 1614.109; this request for a hearing was received by the EEOC, which issued an Acknowledgment and Order dated May 9, 2013 and assigned an Administrative Judge to hear Plaintiff's complaint. *See* EEOC No. 420-2013-00140X, Acknowledgment & Order [23-1] at 1–4.

On February 28, 2013, while Plaintiff's EEO case was still pending before the EEOC Administrative Judge, without first going through the USDA's EEO office or attempting to add new charges to her pending EEO complaint, Plaintiff filed a separate charge of discrimination and retaliation with the EEOC. *See* Pl.'s State-Ct. Compl. [2] ¶ 5; EEOC Charge No. 423-2013-00923 [11-1] at 5. In that EEOC charge, Plaintiff alleged that after she filed her formal EEO complaint, in November of 2012, she was the victim of retaliatory conduct, specifically, that she was issued a performance evaluation which classified her as "less than successful" and that in February of 2013, she was notified she was being placed on a performance improvement plan

based upon her "less than successful" classification. EEOC Charge No. 423-2013-00923 [11-1] at 5. She further alleged in her charge that these acts constitute an attempt to terminate her employment in retaliation for her repeated grievances alleging discriminatory conduct on the part of the agency. *Id.* On March 5, 2013, the EEOC mailed her a Notice of Dismissal, indicating that the EEOC was closing her file on the charge because she was a federal employee. *See* Pl.'s State-Ct. Compl. [2] ¶ 5; EEOC Charge No. 423-2013-00923, Dismissal & Notice of Rights [11-1] at 6. Oddly, the Notice of Dismissal also included a right-to-sue letter, despite that the stated reason Plaintiff's charge was dismissed was because she was a federal employee and had not exhausted her administrative remedies.

On May 30, 2013, Plaintiff initiated this action in state court, alleging sex discrimination, retaliation, hostile work environment, and breach of the April 12, 2012 Resolution Agreement between Plaintiff and Defendants. *See* Pl.'s State-Ct. Compl. [2]. Defendants timely removed the action to this Court on October 17, 2013. *See* Defs.' Notice of Removal [1]. On October 22, 2013, the USDA filed a notice of civil action in the pending EEOC appeal, informing the EEOC Administrative Judge that Plaintiff had initiated suit in state court on the same underlying facts as in Plaintiff's appeal to the EEOC. *See* EEOC No. 420-2013-00140X, Notice of Civil Action [11-2]. On November 5, 2013, the Administrative Judge entered an Order pursuant to 29 C.F.R. § 1614.409, terminating EEOC processing of the appeal to prevent Plaintiff "from simultaneously pursuing both administrative and judicial remedies on the same matters . . . ." and finding that "the claims raised [in the state-court complaint] are the same as those in this instant complaint." EEOC No. 420-2013-00140X, AJ's Order [11-3] at 1. Notably, the Administrative Judge did <u>not</u> reach the issue of whether the allegations in Plaintiff's state-court complaint were the same as those in her subsequent EEOC charge—nor could it, as that subsequent EEOC

charge was not before the Administrative Judge and was an entirely separate proceeding in the EEOC. For this reason, the Plaintiff's argument that Defendants are estopped from now arguing failure to exhaust, because this is an inconsistent position with their earlier position in the EEO proceeding, is not well taken. The EEO proceeding only encompassed those claims that were within the scope of the EEO complaint. Any position contrary to the current position on exhaustion was made with respect to those allegations in the EEO complaint, only. Thus, the Court finds that Defendants are not estopped from arguing exhaustion, and the allegations in the EEO complaint—which are explored in greater detail below—survive the Rule 12(b)(1) challenge.

On December 4, 2013, the USDA entered a Final Order dismissing Plaintiff's internal EEO complaint and informing Plaintiff that if she desired to appeal the agency's dismissal of the EEO complaint, Plaintiff could choose to either file a separate appeal of this final action and the EEOC AJ's decision to the EEOC within thirty days of the receipt of the final action; or file a civil action in federal district court within 90 days of the receipt of the final action. *See* USDA Office of Adjudication, Final Order [23-3] at 1–5.

Plaintiff filed her state-court complaint on May 30, 2013—238 days after she filed her formal EEO complaint with her agency on October 4, 2012. It is clear to this Court that because Plaintiff's state-court complaint was filed more than 180 days after she filed her formal EEO complaint with her agency, Plaintiff has administratively exhausted the allegations in her EEO complaint. *See Thomas v. Napolitano*, 449 F. App'x 373, 374–75 (5th Cir. 2011) (per curiam) (citing 42 U.S.C. § 2000e–16(c); *Martinez v. Dep't of U.S. Army*, 317 F.3d 511, 513 (5th Cir. 2003); *Munoz v. Aldridge*, 894 F.2d 1489, 1493–1494 (5th Cir. 1990) ("Administrative remedies are exhausted when the federal agency gives notice of its final action, or when 180 days have

passed since the initial formal charge was filed with the agency."). However, it is equally clear to this Court that Plaintiff has failed to exhaust her administrative remedies with respect to the allegations presented for the first time in her EEOC charge. *See Rivers*, 548 F. App'x at 1016 (citing 29 C.F.R. § 1614.105(a) ("Federal employees must seek informal counseling with an EEO counselor before filing a complaint of discrimination with the EEOC.").

The Fifth Circuit has instructed district courts to "interpret[] what is properly embraced in review of a Title VII claim somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which 'can reasonably be expected to grow out of the charge of discrimination.' " *Pacheco*, 448 F.3d at 789 (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)); *see See Mitchell v. U T L X Mfg., L.L.C.*, --- F. App'x ----, 2014 WL 2186780, at *3 (5th Cir. May 27, 2014) (per curiam); *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 274–75 (5th Cir. 2008) ("[T]he 'scope' of the judicial complaint is limited to the 'scope' of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."). The Eleventh Circuit has stated: "[J]udicial claims are allowed if they amplify, clarify, or more clearly focus the allegations in the EEOC complaint, but . . . allegations of new acts of discrimination are inappropriate." *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1279–1280 (11th Cir. 2004) (quotation marks and citation omitted).

With the foregoing standard in mind, the Court turns to examine Plaintiff's EEO complaint, which was filed on October 9, 2012. In her EEO complaint, Plaintiff states the following bases of discrimination which were the subject of EEO counseling:

> Aggrieved states on August 7, 2012, [Plaintiff's] immediate supervisor, Dr. Walker Jones[,] advised her that safety cross inspections were coming up in September 2012, she needed to update the chemical inventory for lab 115[,] and she needed to

clean the floors. The Aggrieved has been denied the resources assigned to her in her Job Description for over one year while male peers under the direction of the RL Dr. Walker Jones have enjoyed full staffing levels and have had technicians replaced or added as need to their staff while the Aggrieved has not. The lab 15 is within the Quarantine Building and as such is the responsibility of the Quarantine Officer to maintain, as stated by the Area Director, and that instructing the Aggrieved to clean the floor and do the chemical inventory instead of instructing the Quarantine Officer to do so is one more example of many in which the RL Dr. Walker Jones has treated the Aggrieved differently from the other male Category 1 Scientists in his Unit.

Pl.'s EEO Complaint [8-1] at 1. Plaintiff's EEO complaint encompasses several informal grievances against the agency, including the following.

First, the EEO complaint encompasses grievance that her research leader, "Dr. Jones[,] confronted her in the presence of her subordinate staff and incorrectly refuted her authority over resources allocated to her research"; that Plaintiff "was receiving conflicting information from Fannie Byrd, Biological Science Technician, who was her subordinate[,] and Dr. Jones, her Research Leader, concerning the cleaning, renovation[,] and equipment move into the Quarantine area where the Aggrieved was performing several ongoing research projects"; that Plaintiff was excluded from certain plans by Dr. Jones and Ms. Byrd; and that "Dr. Jones intentionally undermin[ed] [Plaintiff's] supervisory authority by directly interacting with her employees, rather than following a normal chain of command and making his wishes known to [Plaintiff] and allowing her to make appropriate planning decisions and scheduling arrangements to accomplish what is necessary in order to achieve Dr. Jones' goals and reconcile[] them with her own goals." *Id.* at 2. Second, the EEO complaint encompasses Plaintiff's grievance concerning the agency's subsequent removal of Plaintiff's technician, Byrd, from Plaintiff's supervision and other matters concerning the agency's response to her earlier grievance. *Id..* at 3. Third, the EEO complaint encompasses Plaintiff's grievance that "Dr. Jones gave [Plaintiff's]

temporary employee, Ms. Ebony Williams, permission to cease working on a simple task [Plaintiff] had given her and granted her Administrative Leave for the remainder of the day"; that "Dr. Jones informed [Plaintiff] that Mr. Archie Tucker had instructed him to reassign Ms. Williams to another supervisor and that [Plaintiff] would not be allowed to replace Ms. Williams with any of the experienced insect workers" but that "[Plaintiff] could begin recruiting from outside the current work pool"; that "Dr. Jones had reassigned Ms. Williams to himself, and assigned her to work in the SRQF under the indirect supervision of Ms. Byrd." *Id.* at 3. The EEO complaint further includes allegations "that resolutions actually stated by the [a]gency throughout the administrative grievance process are punitive and retaliation for filing the grievance" and "that the underlying conflict has gotten worse instead of better during the grievance process." *Id.* at 4. The EEO complaint further includes allegations that Plaintiff "has been denied the resources assigned to her in her Job Description for over one year while male peers under the direction of the RL Dr. Walker Jones have enjoyed full staffing levels and have had technicians replaced or added as need to their staff while [Plaintiff] has not. The lab 115 is within the Quarantine Building and as such is the responsibility of the Quarantine Officer to maintain, as stated by the Area Director, and instructing [Plaintiff] to clean the floor instead of instructing the Quarantine Officer to do so is one more example of the RL Dr. Walker Jones treating [Plaintiff] differently from the other male Category 1 Scientists in his Unit." *Id.* at 4–5. The USDA accepted and referred for investigation the following allegations of Plaintiff's EEO complaint: "Whether [Plaintiff] was subjected to discrimination based on sex (female), when on August 7, 2012, she was assigned duties that should have been assigned to the Quarantine Officer, including updating the chemical inventory for laboratory 115 and cleaning the laboratory floors"; and "on an ongoing basis, management refuses to provide her with the

staffing necessary to perform her job as a GS-0414-13, Research Entomologist, even though her male counterparts are staffed in accordance with their needs." 11/16/2012 USDA Letter Accepting EEO Compl. [8-1] at 6.

In examining the scope of the EEO complaint, the Court notes at the outset that because the EEO complaint was filed on October 9, 2012, the investigation could not have reasonably included any events or grievances alleged to have occurred after that date. As the Fifth Circuit has stated: "A person cannot reasonably expect a concluded investigation to include an event that has not yet occurred." *Sapp v. Potter*, 413 F. App'x 750, 752 (5th Cir. 2011) (per curiam). Therefore, to the extent Plaintiff claims in her state-court complaint that she was subjected to sex discrimination, hostile work environment, and retaliation after October 9, 2012, those claims are dismissed without prejudice for failure to exhaust administrative remedies. Plaintiff has also failed to exhaust her administrative remedies on her claim that Defendants breached the resolution agreement between Plaintiff and Defendants, as the scope of the investigation would not have included that—no such allegations are included in the EEO complaint. Thus, Plaintiff's breach-of-contract claims are dismissed without prejudice. Plaintiff has further failed to exhaust her administrative remedies on her claims that she was "retaliated against . . . by being placed on a performance improvement plan and subjected to baseless and falsified 'write-ups' related to her work performance," *see* Pl.'s State-Ct. Compl. [2] ¶¶ 9, 14, as such claims are outside the scope of Plaintiff's EEO complaint.

It is this Court's opinion that Plaintiff has exhausted her administrative remedies on her claims of sex discrimination due to disparate treatment pre-dating October 9, 2012; that although Plaintiff does not explicitly include retaliation as a basis of her EEO complaint, Plaintiff has exhausted her administrative remedies on a retaliation claim with respect to allegations of

retaliation that occurred during the proposed resolutions stage of the grievance process pre-dating October 9, 2012; and that although Plaintiff did not explicitly allege hostile work environment in her EEO complaint, the EEO complaint contains allegations supporting such a claim, and thus, that a hostile work environment claim is within the scope of her EEO complaint. However, for the reasons stated below, Plaintiff's claims fail on their merits.

### b. Rule 12(b)(6)

Defendant next challenges Plaintiff's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, which allows a party to move for dismissal of a complaint when the plaintiff has failed to state a claim upon which relief can be granted, but such motions "are viewed with disfavor and are rarely granted." *See Kocurek v. Cuna Mut. Ins. Soc'y*, 459 F. App'x 371, 373 (5th Cir. 2012) (citing *Gregson v. Zurich Am. Ins. Co.*, 322 F.3d 883, 885 (5th Cir. 2003)). In ruling on a motion to dismiss brought under Rule 12(b)(6), " 'courts must take all of the factual allegations in the complaint as true,' but 'are not bound to accept as true a legal conclusion couched as a factual allegation.' " *Wood v. Moss*, — U.S. —, —, 134 S. Ct. 2056, 2065 n.5, 188 L. Ed. 2d 1039 (May 27, 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (internal quotation marks omitted)). " '[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim.' " *Webb v. Morella*, 522 F. App'x 238, 241 (5th Cir. 2013) (per curiam) (quoting *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152–53 (5th Cir. 2010)).

As mentioned above, Plaintiff brings her claims under Title VII. Title VII is a detailed statutory scheme that "enumerates specific unlawful employment practices" and "provides remedies to employees for injuries related to discriminatory conduct and associated wrongs by employers," including race-based discrimination by employers (§ 2000e-2) and retaliation for the

employee's making or supporting a complaint about unlawful employment actions (§ 2000e-3)(a)). *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, ____ U.S. ____, 133 S. Ct. 2517, 2522, 2530 (June 25, 2013). "Title VII is central to the federal policy of prohibiting wrongful discrimination in the Nation's workplaces and in all sectors of economic endeavor." *Id.* at 2522.

Where a sex discrimination, hostile work environment, or retaliation claim is based on circumstantial evidence, as Plaintiff's sex discrimination, hostile work environment, and retaliation claims are here, the *McDonnell Douglas* burden-shifting framework is used. *See McCoy v. City of Shreveport, La.*, 492 F.3d 551, 556 (5th Cir. 2007) (per curiam). First, Plaintiff must establish a prima facie case of discrimination or retaliation. *See Septimus v. Univ. of Hous.*, 399 F.3d 601, 609 (5th Cir. 2005) (citing *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 142 (2000) (citations omitted)). If Plaintiff has done so, Defendants bear the burden of setting forth a legitimate, non-discriminatory or non-retaliatory reason for their decision. *See id.* If Defendants do so, the presumption of discrimination or retaliation disappears, and Plaintiff must demonstrate a genuine dispute of material fact as to whether Defendant's reasons are not the true reasons but are instead a pretext for discrimination or retaliation. *See id.* (citing *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 512 (5th Cir. 2001)).

Plaintiff's remaining claims of sex discrimination, hostile work environment, and retaliation all fail on their merits, because Plaintiff has failed to make out a prima facie case on any of the claims. Even assuming *arguendo* that Plaintiff's claims that the Court stated above are dismissed under Rule 12(b)(1) were actually administratively exhausted, and thus are actually properly before the Court, those claims also fail on their merits, because Plaintiff has failed to make out a prima facie case on those claims.

To establish a prima facie case of sex discrimination, hostile work environment, or

retaliation, Plaintiff "must prove that . . . she was subject to an 'adverse employment action'—a judicially-coined term referring to an employment decision that affects the terms and conditions of employment." *See Thompson v. City of Waco, Tex.*, --- F.3d ----, 2014 WL 4364153, at *1 (5th Cir. Sept. 3, 2014) (citing *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 281–82 (5th Cir. 2004)).

In Plaintiff's response to Defendants' motion, she argues with respect to all of her Title VII claims that she has been subjected to the adverse employment action of being "actively prevented from obtaining more extramural funding," upon which her job security depends. She maintains that the denial of extramural funding has caused her not to be able to "conduct research and make publications regarding her research," which in turn has caused her to "receive[ ] negative evaluations and be[ ] placed on performance improvement plans for the very purported 'performance problems' bringing in more extramural funding would resolve" and has resulted in Plaintiff being told that her Research Unit would no longer support her research and that she must now seek another Research Unit to support her research outside the mid-south area. Pl.'s Resp. Opp'n to Defs.' Mot. [11] at 21–22. In her complaint, Plaintiff alleges that she "has suffered the adverse employment actions of being placed on a performance improvement plan, being issued baseless 'write-ups,' being denied the opportunity to publish, being denied support staff[,] and other adverse employment actions to be proven in this cause . . . ." Pl.'s State-Ct. Compl. [2] ¶ 15. Apparently, all of the alleged adverse employment actions stem from one larger alleged adverse employment action of being denied extramural funding. Plaintiff apparently contends that these acts individually and in the aggregate constitute adverse employment action. None of these alleged actions constitute an adverse employment action under Title VII. Thus, Plaintiff has failed to show an adverse employment action to support her

sex discrimination, hostile work environment, and retaliation claims.

The Fifth Circuit has held that in Title VII discrimination claims, "adverse employment actions consist of 'ultimate employment decisions' such as hiring, firing, demoting, promoting, granting leave, and compensating." *Id.*, 2014 WL 4364153, at *2 (citing *McCoy*, 492 F.3d at 560; *Alvarado v. Tex. Rangers*, 492 F.3d 605, 612 (5th Cir. 2007); *Pegram*, 361 F.3d at 282). "[A]n employment action that does not affect job duties, compensation, or benefits is not an adverse employment action." *Id.* (quoting *Pegram*, 361 F.3d at 282 (citation and some quotation marks omitted)). "[W]here the evidence produces no objective showing of a loss in compensation, duties, or benefits," no adverse employment action is demonstrated. *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004). Plaintiff fails to allege that she suffered a loss in compensation, duties, or benefits. She vaguely alleges in her state-court complaint that she was "denied benefits," *see* Pl.'s State-Ct. Compl. [2] ¶ 14, but provides no factual support for this particular allegation. Instead, her allegations are that she was treated unfairly and denied resources male counterparts received. Plaintiff has failed to allege an adverse employment action to sustain her sex discrimination claim.

Retaliation claims allow a "broader definition" of adverse employment action. *Anthony v. Donahoe*, 460 F. App'x 399, 404 (5th Cir. 2012) (per curiam). "To establish that she suffered adverse employment action [for a Title VII retaliation claim], [Plaintiff] must show that 'a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.' " *See Davis v. Fort Bend County, Tex.*, --- F.3d ----, 2014 WL 4209371, at *8 (5th Cir. Aug. 26, 2014) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006))). This materiality requirement separates

"significant from trivial harms." *Id.* (quoting *White*, 548 U.S. at 68, 126 S. Ct. 2405). "Thus, 'petty slights, minor annoyances, and simple lack of good manners' are not actionable retaliatory conduct; Title VII 'does not set forth a general civility code for the American workplace.' " *Id.* (quoting *White*, 548 U.S. at 68, 126 S. Ct. 2405). "Importantly, 'the significance any given act of retaliation will often depend upon the particular circumstances. Context matters.' " *Id.* (quoting *White*, 548 U.S. at 69, 126 S. Ct. 2405). For example, "to retaliate by excluding an employee from a weekly training lunch that contributes significantly to the employee's professional advancement might well deter a reasonable employee from complaining about discrimination." *White*, 548 U.S. at 69, 126 S. Ct. 2405.

Plaintiff does not allege that she was "demoted" or that she "experienced [a] change to her salary or her benefits," *see Anthony*, 460 F. App'x at 404, aside from her conclusory allegation that she was "denied benefits" that has no accompanying factual support. Any allegations that she was threatened with termination are not cognizable as an adverse employment action. *See Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 708 (5th Cir.) ("verbal threat of being fired" is not an adverse employment action for purposes of Title VII), *cert. denied*, 522 U.S. 932, 118 S. Ct. 336, 139 L. Ed. 2d 260 (1997)). Her other allegations of "adverse employment actions" similarly fail to satisfy the pleading standard. In *Mattern*, the Fifth Circuit held that the definition of "adverse employment action" for retaliation claims under Title VII does not include action that has "mere tangential effect on a possible future ultimate employment decision" such as disciplinary action, reprimand, poor performance, or "anything which might jeopardize employment in the future." *See id.* at 708.

For all of the foregoing reasons, Plaintiff has failed to make out an adverse employment action for Title VII purposes. As her only claims are brought under Title VII, her complaint

must be dismissed in its entirety for failure to state a claim under Rule 12(b)(6). Accordingly, the Court need not reach the Rule 56 arguments.

### C. Conclusion

In sum, Defendants' motion to dismiss or, in the alternative, for summary judgment [8] is GRANTED; all claims are DISMISSED pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure; and this case is CLOSED.

A separate order in accordance with this opinion shall issue this day.

THIS, the 23rd day of September, 2014.

_____
SENIOR JUDGE